# IN THE DISTRICT COURT OF THE UNITED STATES

## For the Western District of New York

_____

|  |  |
|---|---|
|  | **APRIL 2012 GRAND JURY**<br>**(Impaneled 04/27/12)** |
| **THE UNITED STATES OF AMERICA** |  |
| *-vs-* | **INDICTMENT** |
| **KENNETH M. GRIFFIN**<br>(Counts 1-12), and<br>**BRIAN K. CAMPBELL**<br>(Counts 1-12) | **Violations:**<br><br>Title 18, United States Code,<br>Sections  2, 1341, 1343, 1349,<br>1956(h) and 1957(a)<br>(12 Counts) |

## INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.  Defendant KENNETH M. GRIFFIN ("GRIFFIN") owned and controlled an employment staffing business ("GRIFFIN's employment staffing business") located in Rochester, New York, that operated under various names and nominee owners, including LHT USA, Inc. ("LHT USA") and Cambridge Personnel, Inc. ("Cambridge Personnel"). GRIFFIN's employment staffing business operated by hiring employees and then selling the employees' labor to its customers.  The business profited by charging its customers more than it paid to the employees.

2.   Defendant BRIAN K. CAMPBELL ("CAMPBELL") worked at GRIFFIN's employment staffing business.  Defendant CAMPBELL was responsible for the financial aspects of the business, including bookkeeping, accounting, billing and payroll matters.

3.   "Accounts receivable" were money owed to a company, such as defendant GRIFFIN's employment staffing business, by its customers for goods or services provided to the customers on credit.  An account receivable was created when defendant GRIFFIN's employment staffing business sent an invoice, or bill, to its customer for payment of the services provided.  Accounts receivable were a current asset of the business and were continually converted into cash as customers paid their bills.

4.   "Factoring" was a financial transaction in which a company, such as defendant GRIFFIN's employment staffing business, sold one or more of its accounts receivable to a company referred to as a "factoring company" at a discount.  The transaction provided GRIFFIN's employment staffing business with immediate cash.  In turn, the factoring company made a profit by collecting from the customer the full amount of the accounts receivable, but also assumed the costs and risks of collection.

5.     The process by which GRIFFIN's employment staffing business sold its accounts receivable to a factoring company was as follows: (a) GRIFFIN's employment staffing business invoiced a customer for services provided, which invoice reflected what the customer owed to the business and stated the term for payment (for example, payment within 45 days), generating an account receivable; (b) GRIFFIN's employment staffing business sent a copy of this invoice to the factoring company, along with any other documentation that the factoring company required (for example, time keeping records); (c) the factoring company purchased the account receivable on the basis of the invoice and supporting documents, providing GRIFFIN's employment staffing business with immediate cash; (d) the customer was told to pay the invoiced amount to the factoring company when the invoice became due; and (e) when due, the customer paid the factoring company the invoiced amount.

6.     Amerisource Funding ("Amerisource"), Interstate Capital Corporation ("ICC"), and New Century Financial ("NCF") (collectively, "the factoring companies"), were factoring companies that entered into contracts with GRIFFIN's employment staffing business to purchase accounts receivable from GRIFFIN's employment staffing business.

7.   Comdata Corporation ("Comdata") was a company offering debit card and financial services.  GRIFFIN's employment staffing business established an account at Comdata and transferred funds to the account.  Upon the transfer of funds to its account, employees of GRIFFIN's employment staffing business were able to use a telephone and internet-connected computer to load money onto Comdata debit cards linked to the business' account.  Comdata debit cards were personal identification number (PIN) activated and could be used at automated teller machines (ATMs) and point-of-sale debit networks to withdraw cash and engage in other transactions.

8.   The account established by the defendants GRIFFIN and CAMPBELL for GRIFFIN's employment staffing business at Comdata was identified as Account No. LH003.  After purchasing accounts receivable from GRIFFIN's employment staffing business, the factoring companies were instructed to pay for the accounts receivable by sending money to Account No. LH003 at Comdata.  Those payments were deposited into a Comdata bank account, account number XXXXXXX68, maintained at Regions Bank formerly known as AmSouth Bank, in Birmingham, Alabama ("Regions Bank"), for the benefit of defendant GRIFFIN's employment staffing business Account No. LH003. The defendants GRIFFIN and CAMPBELL were then able to use the funds to load money onto Comdata debit cards linked to Account No. LH003.

**COUNT 1**
**(Conspiracy to Commit Mail Fraud and Wire Fraud)**

**The Grand Jury Charges That:**

1.    The Introductory Allegations of the Indictment are incorporated herein by reference.


**A.    THE OBJECT OF THE CONSPIRACY**

2.    From in or before August 2007, and continuing thereafter until in or about June 2008, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendants, KENNETH M. GRIFFIN and BRIAN K. CAMPBELL, did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown to the Grand Jury, to commit the offenses of mail fraud and wire fraud, that is:


a.    to devise a scheme and artifice to defraud factoring companies and to obtain money from the factoring companies by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice deposit, and cause to be deposited, matter to be sent and delivered by private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341; and

b.   to devise a scheme and artifice to defraud factoring companies and to obtain money from the factoring companies by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmitting, and causing to be transmitted, by means of wire communication in interstate commerce writings, signs, signals and pictures, in violation of Title 18, United States Code, Section 1343.

3.   The object of the conspiracy and the scheme and artifice consisted of the defendants GRIFFIN and CAMPBELL and other co-conspirators inducing the factoring companies to purchase from GRIFFIN's employment staffing business false and fraudulent accounts receivable.  The defendants GRIFFIN and CAMPBELL induced the factoring companies by falsely and fraudulently representing to them that such accounts receivable represented money owed to GRIFFIN's employment staffing business by its customers.

**B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY
      WAS TO BE ACCOMPLISHED**

The object of the conspiracy was accomplished through the following means:

4.    Defendants   GRIFFIN   and   CAMPBELL   caused   GRIFFIN's
employment staffing business to sell false and fraudulent accounts
receivable to factoring companies by creating, and causing to be
created,  false  and  fraudulent  invoices  and  supporting  documents
that   falsely   represented   that   GRIFFIN's   employment   staffing
business was owed money from actual and fictitious customers for
services  that  GRIFFIN's  employment  staffing  business  had  not
actually provided.  Defendants used various artifices to facilitate
the sale of false accounts receivable, including forged signatures
and   notarizations,   fictitious   time   sheets   for   non-existent
employees, and false impersonation of a nominee owner of GRIFFIN's
employment staffing business.

5.    After paying GRIFFIN's employment staffing business for
the purchase of the false and fraudulent accounts receivable, the
factoring companies were unable to collect money from the customers
identified on the false invoices and supporting documents.

6.    When  the  factoring  companies  realized  that  they  were
unable to collect the false and fraudulent accounts receivable,
defendants GRIFFIN and CAMPBELL attempted to cover up the scheme
through   further   false   and   fraudulent   statements   and
representations.

C.   **ACTS IN FURTHERANCE OF THE CONSPIRACY**

In furtherance of the conspiracy the following acts, among others, were committed in the Western District of New York, and elsewhere:

7.   In or about August 2007, defendant GRIFFIN began to operate his employment staffing business as LHT USA with an address of 46 Prince Street, Rochester, New York.

8.   Defendant GRIFFIN used LHT USA to conceal his ownership of, and control over, his employment staffing business.  Defendant GRIFFIN represented, and caused to be represented, that A.L., a person known to the Grand Jury, owned and controlled LHT USA.

### *Amerisource Funding*

9.   On or about August 28, 2007, defendant GRIFFIN caused LHT USA to enter into a contract with Amerisource for the purchase of accounts receivable from LHT USA.

10 - 13.  Beginning on or about August 19, 2007, and continuing through on or about December 16, 2007, defendants GRIFFIN and CAMPBELL induced Amerisource to purchase false and fraudulent accounts receivable from LHT USA, in the amounts shown below, by providing Amerisource with false invoices and supporting

documents describing monies purportedly owed by the customers shown below for services that LHT USA had not actually provided to such customers.

| NAME OF LHT USA CUSTOMER | AMOUNT OF FALSE ACCOUNTS RECEIVABLE |
|---|---|
| ECG IKON | $ 26,260.26 |
| Kelly Services - B & L | $ 84,726.25 |
| Kelly Services - J & J | $ 97,848.06 |
| Mindex Technology | $ 15,056.00 |
| TOTAL | $223,890.57 |

## *Interstate Capital Corporation*

14.  On or about August 9, 2007, defendants GRIFFIN and CAMPBELL caused LHT USA to enter into a contract with ICC for the purchase of accounts receivable.

15.  In or about December 2007, defendant GRIFFIN (a) caused LHT USA to represent to ICC that it was dissatisfied with the services of Amerisource, (b) caused LHT USA to request ICC to purchase from Amerisource the false and fraudulent accounts receivable identified in paragraph 10, above, and (c) caused ICC to purchase these false accounts receivable from Amerisource.

16 - 19.  Beginning on or about December 28, 2007, and continuing through on or about January 8, 2008, defendants GRIFFIN

and CAMPBELL induced ICC to purchase false and fraudulent accounts receivable from LHT USA, in the amounts shown below, by providing ICC with false invoices and supporting documents describing monies purportedly owed by the customers shown below for services that LHT USA had not actually provided to such customers.

| NAME OF LHT USA CUSTOMER | AMOUNT OF FALSE ACCOUNTS RECEIVABLE |
|---|---|
| Kelly Services – B & L | $23,026.93 |
| Kelly Services – J & J | $25,515.91 |
| Mindex Technology | $ 6,600.00 |
| *TOTAL* | *$55,142.84* |

### *New Century Financial*

20.   In or about January 2008, ICC stopped purchasing accounts receivable from LHT USA because ICC was unable to collect on the false invoices.   For the purpose of inducing a new factoring company to do business with his employment staffing business, defendant GRIFFIN abandoned the name LHT USA and changed the name of his business to Cambridge Personnel.   Defendant GRIFFIN concealed his ownership and involvement in Cambridge Personnel by representing, and causing to be represented, that C.S., a person known to the Grand Jury, owned and controlled Cambridge Personnel. In addition, defendant GRIFFIN moved the business from 46 Prince Street, Rochester, New York, to 207 Tremont Street, Rochester, New York.

21.   In or about February 2008, defendants GRIFFIN and CAMPBELL caused Cambridge Personnel to enter into a contract with NCF for the purchase of accounts receivable.

22.   At the direction of defendants GRIFFIN and CAMPBELL, J.D., a person known to the Grand Jury, signed a contract with NCF, as well as other related documents, using the name of C.S.   In addition, acting at the direction of defendants GRIFFIN and CAMPBELL, J.D. notarized the contract using a fraudulent notary stamp and forged signature of a purported notary public.

23.   When purchasing accounts receivable from Cambridge Personnel, NCF required Cambridge Personnel to execute Invoice Funding Schedules certifying that the accounts receivable represented by the invoices provided to NCF were true and accurate.

24.   From in or about February 2008, and continuing through in or about May 2008 defendants GRIFFIN and CAMPBELL caused Cambridge Personnel to sell to NCF false and fraudulent accounts receivable by falsely representing that Cambridge Personnel was owed money from customers for services that Cambridge Personnel had not actually provided to such customers.

25 - 39.   Specifically, on or about the dates listed below, defendants GRIFFIN and CAMPBELL caused Cambridge Personnel to sell to NCF false and fraudulent accounts receivable by causing Cambridge Personnel to fax from Rochester, New York, to NCF in Texas, (a) false and fraudulent Invoice Funding Schedules, as identified by number below, (b) invoices containing the false and fraudulent accounts receivable in the amounts and for the customers listed below, and (c) other documents supporting the false and fraudulent accounts receivables.

| INVOICE FUNDING SCHEDULE | DATE OF FAX | CUSTOMERS LISTED ON FALSE INVOICES | FALSE AMOUNT ON INVOICES |
|---|---|---|---|
| 2 | 02/11/08 | IKON Office Solutions<br>Peppermint Creative Partners | $ 1,796.98<br>$ 4,987.50 |
| 3 | 02/19/08 | IKON Office Solutions | $   524.00 |
| 4 | 02/26/08 | IKON Office Solutions<br>Apollo Tool & Die | $   514.18<br>$   611.25 |
| 5 | 03/04/08 | IKON Office Solutions<br>Apollo Tool & Die / Accudyne<br>WillStaff WorldWide | $ 4,391.08<br>$ 1,150.88<br>$ 6,552.35 |
| 6 | 03/11/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 3,380.50<br>$ 1,080.00<br>$12,266.48<br>$ 7,600.40 |
| 7 | 03/17/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 6,707.00<br>$ 1,120.50<br>$12,529.28<br>$ 9,672.00 |
| 8 | 03/24/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 3,233.76<br>$ 1,242.00<br>$14,366.22<br>$13,859.54 |

12

| 9 | 03/31/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 3,967.83<br>$ 1,842.00<br>$13,749.98<br>$12,554.80 |
|---|---|---|---|
| 10 | 04/07/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 3,510.05<br>$ 1,080.00<br>$13,262.52<br>$11,773.96 |
| 11 | 04/15/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 6,799.11<br>$ 1,242.00<br>$12,379.28<br>$14,806.28 |
| 12 | 04/21/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 5,285.30<br>$ 1,080.00<br>$13,350.00<br>$13,663.20 |
| 13 | 04/23/08 | IKON Office Solutions | $    780.30 |
| 14 | 04/28/08 | IKON Office Solutions<br>WillStaff WorldWide<br>Adecco | $ 6,490.74<br>$13,800.67<br>$13,248.88 |
| 16 | 05/05/08 | IKON Office Solutions<br>Accudyne<br>WillStaff WorldWide<br>Adecco | $ 4,788.84<br>$    583.98<br>$12,754.40<br>$13,663.20 |
| 17 | 05/12/08 | IKON Office Solutions<br>WillStaff WorldWide<br>Adecco | $ 3,577.97<br>$12,277.92<br>$ 8,376.07 |
| | | *TOTAL* | **$328,275.18** |

40 - 52.   On  or  about  the  dates  listed   below, defendants
GRIFFIN  and  CAMPBELL  caused  NCF  to  wire  funds,  in  interstate
commerce and in the amounts listed below, into Comdata bank account
number XXXXXXXX68, maintained at Regions Bank, benefit of Account
No. LH003, which funds represented the money NCF paid to Cambridge
Personnel  for  the  purchase  of  accounts  receivable,  including  the

13

false and fraudulent accounts receivable.

| INVOICE FUNDING SCHEDULE NUMBER | DATE | AMOUNT OF WIRE TRANSFER |
|---|---|---|
| 2 | 02/12/08 | $ 11,165.79 |
| 3 | 02/19/08 | $  3,065.34 |
| 4 | 02/27/08 | $  3,872.60 |
| 5 | 03/05/08 | $ 14,015.56 |
| 6 | 03/12/08 | $ 26,273.23 |
| 7 | 03/17/08 | $ 28,157.27 |
| 8 | 03/25/08 | $ 34085.00 |
| 9 | 04/01/08 | $ 32,236.60 |
| 10 | 04/08/08 | $ 31,370.73 |
| 11 | 04/15/08 | $ 36,084.50 |
| 12 | 04/22/08 | $ 33,632.66 |
| 13 | 04/23/08 | $  2,599.36 |
| 14 | 04/29/08 | $ 32,583.56 |
| | *TOTAL* | *$289,142.20* |

53.  In or about April 2008 and in or about May 2008, after NCF experienced difficulty collecting payment from Cambridge Personnel's customers, defendants GRIFFIN and CAMPBELL caused Cambridge Personnel employees in Rochester, New York, to send emails to NCF in Texas that sought to discourage NCF from contacting Cambridge Personnel's customers to verify the amounts owed and furthermore provided false explanations to NCF about the reasons why the payments had not been made.

14

54 - 60.   On or about the dates listed below, defendants GRIFFIN and CAMPBELL caused the seven checks listed below to be prepared, sent and delivered by commercial carrier from Rochester, New York, to NCF in Texas, which checks were actually drawn on Cambridge Personnel's own bank account in the amounts listed below to make it appear that the Cambridge Personnel's customers identified below had written the checks and were paying a portion of the false and fraudulent accounts receivable.

| CHECK NUMBER | PURPORTED PAYOR (CUSTOMER) OF CHECK | AMOUNT | DATE |
|---|---|---|---|
| 442761 | IKON | $ 2,074.18 | 04/02/08 |
| 442762 | Peppermint | $ 2,987.50 | 04/02/08 |
| 442769 | Accu-Dyne | $ 1,150.88 | 04/17/08 |
| 442857 | Willstaff | $ 6,552.35 | 04/23/08 |
| 442789 | IKON | $ 4,970.78 | 05/02/08 |
| 442844 | Adecco | $ 7,600.40 | 05/02/08 |
| 442809 | Willstaff | $12,266.48 | 05/06/08 |

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (Wire Fraud)

**The Grand Jury Further Charges That:**

1.   The Introductory Allegations and the factual allegations of Count 1 of the Indictment are incorporated herein by reference.

2.    From in or about February 2008 and continuing to in or about May 2008, in the Western District of New York, and elsewhere, the defendants, KENNETH M. GRIFFIN and BRIAN K. CAMPBELL, did devise, and intend to devise, a scheme and artifice to defraud New Century Financial and to obtain money from New Century Financial by means of false and fraudulent pretenses, representations and promises.

3.    On or about the dates listed below, for the purpose of executing the scheme and artifice, the defendants GRIFFIN and CAMPBELL did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, the false and fraudulent certified Invoice Funding Schedules identified by number below, together with the false invoices and documents supporting the false and fraudulent accounts receivable listed on the schedules, from GRIFFIN's employment staffing business, then doing business as Cambridge Personnel, Inc., in Rochester, New York, to New Century Financial, in Texas.

| INVOICE FUNDING SCHEDULE, INVOICES AND SUPPORTING DOCUMENTS | DATE OF WIRE COMMUNICATION |
|---|---|
| 2 | 02/11/08 |
| 3 | 02/19/08 |
| 4 | 02/26/08 |
| 5 | 03/04/08 |

16

| 6  | 03/11/08 |
|----|----------|
| 7  | 03/17/08 |
| 8  | 03/24/08 |
| 9  | 03/31/08 |
| 10 | 04/07/08 |
| 11 | 04/15/08 |
| 12 | 04/21/08 |
| 13 | 04/23/08 |
| 14 | 04/28/08 |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

**COUNT 3**
**(Mail Fraud)**

**The Grand Jury Further Charges That:**

1.    The Introductory Allegations and the factual allegations of Count 1 of the Indictment are incorporated herein by reference.

2.    From in or about February 2008 and continuing to in or about May 2008, in the Western District of New York, and elsewhere, the defendants, KENNETH M. GRIFFIN and BRIAN K. CAMPBELL, did devise, and intend to devise, a scheme and artifice to defraud New Century Financial and to obtain money from New Century Financial by means of false and fraudulent pretenses, representations and promises.

17

3.   On or about the dates listed below, the defendants GRIFFIN and CAMPBELL, for the purpose of executing the scheme and artifice, and attempting to do so, did deposit, and cause to be deposited, matter to be sent and delivered by private and commercial interstate carriers, the seven checks listed below, which checks were actually drawn on the bank account of GRIFFIN's employment staffing business, in the amounts listed below, in order to make it appear that the customers identified below had written the checks and were paying a portion of the false and fraudulent accounts receivable.

| CHECK NUMBER | PURPORTED PAYOR/CUSTOMER | AMOUNT | DATE |
|---|---|---|---|
| 442761 | IKON | $ 2,074.18 | 04/02/08 |
| 442762 | Peppermint | $ 2,987.50 | 04/02/08 |
| 442769 | Accu-Dyne | $ 1,150.88 | 04/17/08 |
| 442857 | Willstaff | $ 6,552.35 | 04/23/08 |
| 442789 | IKON | $ 4,970.78 | 05/02/08 |
| 442844 | Adecco | $ 7,600.40 | 05/02/08 |
| 442809 | Willstaff | $12,266.48 | 05/06/08 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

18

<u>**COUNT 4**</u>
**(Conspiracy to Engage in Money Laundering)**

**The Grand Jury Further Charges That:**

1.   The Introductory Allegations of the Indictment are incorporated herein by reference.


**A.   <u>THE OBJECT OF THE CONSPIRACY</u>**

2.   From in or about March 2007 and continuing thereafter until in or about May 2008, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendants, KENNETH M. GRIFFIN and BRIAN K. CAMPBELL, did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown to the Grand Jury, to commit money laundering offenses, that is:


a.   to conduct financial transactions which involved the proceeds of a specified unlawful activity, that is, mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, and conspiracy to do so in violation of Title 18, United States Code, Section 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that the property involved in the financial transaction represented the proceeds of some form

of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.   to knowingly engage in monetary transactions by, through and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer and exchange of funds and monetary instruments of a value greater than $10,000, such property having been derived from a specific unlawful activity, that is, mail and fraud wire in violation of Title 18, United States Code, Section 1341 and 1343, and conspiracy to do so, in violation of Title 18, United States Code, Section 1349, and knowing that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense, in violation of Title 18, United States Code, Section 1957(a).

**B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WAS TO BE ACCOMPLISHED**

The object of the conspiracy was accomplished in substance as follows:

3.   In or about March 2007, defendants GRIFFIN and CAMPBELL established an account for GRIFFIN's employment staffing business at Comdata, known as Account No. LH003, and instructed the

factoring companies to pay for the purchase of false and fraudulent accounts receivable by wiring money to Comdata.

4.   After receiving money from the factoring companies, defendant CAMPBELL caused funds contained in the Comdata account to be loaded onto individual Comdata debit cards associated with that account.   The cards were provided to persons known to the Grand Jury, who were directed to withdraw cash from ATMs until the cards had been depleted and provide the cash to defendant GRIFFIN.

5.   On about the dates listed below, and in connection with the Invoice Funding Schedules listed below, the defendants GRIFFIN and CAMPBELL caused New Century Financial to wire transfer from Texas the amounts listed below into Comdata bank account number XXXXXXXX68, maintained at Regions Bank in Birmingham, Alabama, for the benefit of GRIFFIN's employment staffing business, then doing business as Cambridge Personnel, Inc., Account No. LH003.

| INVOICE FUNDING SCHEDULE NUMBER | DATE | AMOUNT |
|---|---|---|
| 2 | 02/12/08 | $11,165.79 |
| 3 | 02/19/08 | $ 3,065.34 |
| 4 | 02/27/08 | $ 3,872.60 |
| 5 | 03/05/08 | $14,015.56 |
| 6 | 03/12/08 | $26,273.23 |
| 7 | 03/17/08 | $28,157.27 |

| 8  | 03/25/08 | $34,085.00 |
|----|----------|------------|
| 9  | 04/01/08 | $32,236.60 |
| 10 | 04/08/08 | $31,370.73 |
| 11 | 04/15/08 | $36,084.50 |
| 12 | 04/22/08 | $33,632.66 |
| 13 | 04/23/08 | $ 2,599.36 |
| 14 | 04/29/08 | $32,583.56 |

6.    Doing  business  as  Cambridge  Personnel,  Inc.,  in Rochester, New York, defendant CAMPBELL loaded individual Comdata debit  cards  by  transferring,  and  causing  to  be  transferred,  onto Comdata debit cards, funds located in Comdata bank account number XXXXXXXX68,  maintained  at  Regions  Bank  in  Birmingham,  Alabama, Account  No.  LH003.   Upon  loading  the  individual  Comdata  debit cards, Account No. LH003 was debited in a corresponding amount.

7.    Defendants GRIFFIN and CAMPBELL provided the loaded Comdata debit cards, along with the PINs needed to access them, to persons  known  to  the  grand  jury  and  directed  them  to  use  the Comdata cards to withdraw cash from ATMs.  Upon completing the cash withdrawals, the persons delivered the cash to defendant GRIFFIN, who divided the cash with defendant CAMPBELL and with others known and unknown to the Grand Jury.

**All in violation of Title 18, United States Code, Section 1956(h).**

22

## COUNTS 5 THROUGH 12
### (Monetary Transactions In Criminally Derived Funds)

**The Grand Jury Further Charges That:**

1.    The Introductory Allegations and the factual allegations of Count 4 of the Indictment are incorporated herein by reference.

2.    On or about the dates listed below, in the Western District of New York, and elsewhere, the defendants, KENNETH M. GRIFFIN and BRIAN K. CAMPBELL, did knowingly engage, and attempt to engage, in monetary transactions by, through and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal of the funds listed below from Comdata bank account number XXXXXXXX68, and the transfer and deposit of such funds onto Comdata debit cards, with such funds having been derived from a specified unlawful activity, that is, mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, and conspiracy to do so, in violation of Title 18, United States Code, Section 1349, and knowing that the funds involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense.

| COUNT | COMDATA CARD NUMBER | AMOUNT | LOAD DATE |
|---|---|---|---|
| 5 | 1608082774 | $13,460.00 | 03/12/08 |
| 6 | 1608082774 | $13,600.00 | 03/19/08 |

| 7  | 1608082774 | $12,100.00 | 03/25/08 |
|----|------------|------------|----------|
| 8  | 1613817677 | $13,930.00 | 04/01/08 |
| 9  | 1613817677 | $14,800.00 | 04/08/08 |
| 10 | 1613817677 | $23,900.00 | 04/15/08 |
| 11 | 1613817677 | $13,000.00 | 04/22/08 |
| 12 | 1613817677 | $35,600.00 | 05/09/08 |

**All in violation of Title 18, United States Code, Sections 1957(a) and 2.**

DATED: Rochester, New York, October 23, 2012.

WILLIAM J. HOCHUL, JR.
United States Attorney

By:   */s/John J. Field*

JOHN J. FIELD
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York 14614
(585)263-6760, ext. 2233
john.field@usdoj.gov

A TRUE BILL:

*/s/Foreperson*

FOREPERSON